IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES E. EBY,** | : | |
| | : | Case No. 2:05-cv-00539 |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| | : | |
| **INTERNAL REVENUE SERVICE,** | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion for Summary Affirmance for Collection Due Process Determination ("CDP hearing") filed by Defendant, the Internal Revenue Service ("Defendant" or "IRS"). This case is an action by Plaintiff, James Eby ("Plaintiff") seeking review and redetermination of the IRS' Notice of Determination. Plaintiff challenges Defendant's determination that he is liable for taxes, interest, and penalties resulting from his former partnership, and challenges Defendant's decision to collect payment through a levy on Plaintiff's property. For the following reasons, the Court **GRANTS** Defendant's Motion.

**II. BACKGROUND**[1]

Plaintiff, James Eby, was a general partner for nine years with the law firm of Fahnenbruck & Eby ("the partnership"), which ceased operations on or around September 30,

---

[1] These facts were taken from Plaintiff's Complaint and the accompanying Notice of Determination.

1995.  After the partnership ceased operations, the IRS assessed taxes against it.  Those taxes were based on six Form 941 tax returns, one of which were filed by the partnership in June 1994 and five of which were prepared by the IRS.  Additionally, the IRS assessed two civil penalties against the partnership for the same Form 941 returns.

Plaintiff received a Notice of Intent to Levy, which was issued June 15, 2004.  He requested a CDP hearing relating to the Notice of Intent to Levy on July 13, 2004.  The hearing was conducted by an Appeals Officer both on December 28, 2004 and on January 21, 2005.  The results of the CDP hearing and the Appeals Officer's final determination were sent to Mr. Eby in a Notice of Determination, dated May 6, 2005.

The Notice of Determination relayed a summary of the hearing and the IRS's determination.  During the hearing, the Plaintiff did not challenge the validity of four of the Form 941 returns, which had been filed by the IRS.  The Appeals Officer abated one of the remaining Form 941 returns.  Additionally, the Appeals Officer determined that the civil penalties had been discharged during the Plaintiff's Chapter 7 bankruptcy proceedings, filed in 1995.  The final Form 941 return at issue was for the period of June 1994, which was also the only Form 941 return that the partnership had filed of its own accord.

During the CDP hearing, Plaintiff set forth two explanations for removing his liability for the June 1994 Form 941 return.  First, Plaintiff explained that he believed the liability had been discharged with his other debt during the his personal bankruptcy proceedings.  The Appeals Officer informed Plaintiff that the liability was not dischargeable, under Bankruptcy Code

Section 523(a)(1).[2]  Section 523(a)(1) provides that taxes described in Section 507(a)(8) are not dischargeable.[3]  Section 507(a)(8) describes those taxes as employment taxes on wages, salary, or commission for which a return is due after three years before the filing date of the petition.[4]  The Form 941 returns in question were filed less than three years before Plaintiff filed for bankruptcy; thus, according to the Appeals Officer, those taxes were not dischargeable.

The Plaintiff's second argument for removing his liability was that the Collection Statute Expiration Date ("CSED") had expired on the liability for the June 1994 Form 941 return.  The CSED was originally set to expire September 27, 2004.  Internal Revenue Code Section 6330(e)(1) provides that the CSED is suspended for the period of a hearing, and in no event shall the CSED expire before 90 days after the date of a final determination on the hearing.  Plaintiff requested the hearing on July 13, 2004, and, thus, the Appeals Officer found the CSED had not yet expired on the liability for June 1994.

Plaintiff introduced other issues to which the Appeals Officer responded during the hearing or in the Notice of Determination.  These issues included a request for abatement of penalties and interest because of illness of the other partner in the firm, and illness within

---

[2]"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
    (1) for a tax or customs duty--
        (A)of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of
        this title . . . ."
11 U.S.C. § 523(a)(1)(A).

[3]*See supra* note 2.

[4]Section 507(a)(8)(A) describes "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition--
    (i) for which a return, if required, is last due, including extensions, after three years
    before the date of the filing of the petition . . . ."
11 U.S.C. § 507(a)(8)(A)(i).

Plaintiff's family. Plaintiff attributed his lack of funds available to pay taxes to the costs of those illnesses. Plaintiff also asserted that he was currently unable to repay those taxes because the IRS had not advised him of what taxes he still owed after the bankruptcy proceedings and because of the strain caused by his own illness. The Appeals Officer determined that Plaintiff had not shown reasonable cause for the abatement of the penalties and interests. The Appeals Officer indicated that the partnership's filing and payment of taxes had occurred before Plaintiff's partner became ill. Also, the Appeals Officer found that Plaintiff had not presented any evidence to prove that his inability to pay taxes was due, in part, to his illness.

In response to Plaintiff's assertion that the IRS's lack of notice had made him unable to pay his taxes, the Appeals Officer responded that he could find no requirement that the IRS provide annual notices to taxpayers with respect to unpaid tax liability. Further, the Appeals Officer pointed to other notices sent to Plaintiff after his bankruptcy proceedings. The IRS sent notices to the partnership's address on record in November 2001, November 2002, and April 2004. The Appeals Officer found that the absence of the reminder notices from 1996 through 2001 did not result in a discharge of the Plaintiff's tax liability.

Plaintiff also argued that the Notice of Intent to Levy was in violation of bankruptcy laws. The Appeals Officer treated this argument as moot because the taxpayer was no longer being held liable for the Form 941 return periods that had been discharged during the bankruptcy proceedings. Additionally, Plaintiff suggested payment collection alternatives, but had not filed the necessary paperwork before the February 22, 2005, deadline. Moreover, by March 22, 2005, Plaintiff had still not filed the paperwork.

During the hearing, Plaintiff argued that the liability and notice problem was further

complicated because the IRS had dealt with the partnership where it should have dealt with Plaintiff himself, and vice versa. Under the CSED issue, Plaintiff argued that the CSED had expired with respect to him personally because only the partnership had requested the CDP hearing. Later, Plaintiff argued that the levy was in violation of federal bankruptcy laws because he, as an individual, had filed for bankruptcy proceedings which resulted in dismissal of his liabilities. The Appeals Officer responded that the CSED had not expired as to him personally because Plaintiff had raised other issues at the hearing with respect to his claims as an individual.[5] The Appeals Officer issued its Notice of Determination on May 6, 2005, which contained both his determination as well as a brief summary of the hearing.

On June 6, 2005, Plaintiff filed this action in federal court. In his complaint (the "Complaint"), Plaintiff seeks review and redetermination of the May 2006 Notice of Determination, and he argues that he is not liable for the taxes, penalties, and interest alleged in the Notice of Intent to Levy. Alternatively, Plaintiff seeks a finding that he be given the opportunity to resolve any liability with the appropriate payment arrangements or compromises.

The matter is now before the Court on the Defendant's Motion for Summary Affirmance. Defendant contends that because Plaintiff did not raise the issue of underlying liability during the CDP hearing, the proper standard for review by this Court is "abuse of discretion" by the hearing officer. Defendant contends that the Appeals Officer did not abuse his discretion, and argues

---

[5]The Appeals Officer also pointed towards *U.S. v. Wright*, 57 F.3d 561 (7th Cir. 1995), where partners of a partnership had made the same argument. In *Wright*, argued the Appeals Officer, the court had found that derivative liability followed entity liability. The Appeals Officer's interpretation of *Wright* is accurate. In finding the partners liable, the court in *Wright* relied on *United States v. Updike*, 281 U.S. 489 (1930): "Ever since [*Updike*], it has been understood that persons liable for someone else's taxes owe "taxes" themselves unless federal law supplies a different designation . . . ." *Id.* at 494-96.

that: (1) applicable law or administrative procedure has been applied; (2) the issues raised by Plaintiff have been addressed; and (3) the need for efficient collection has been balanced with Plaintiff's legitimate concern that collection be no more intrusive than necessary as required under 26 U.S.C. § 6330(c).[6]

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-34 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

---

[6]"The determination by an appeals officer under this subsection shall take into consideration--
    (A) the verification presented under paragraph (1);
    (B) the issues raised under paragraph (2); and
    (C) whether any proposed collection balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."
26 U.S.C. § 6330(c)(3).

nonmoving party." *Anderson v, Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Aldickes v. S.J. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

## IV. ANALYSIS

### A. Redetermination of the Notice of Determination

The CDP hearing was created by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105-206, 112 Stat. 685.[7] The taxpayer has a right to a CDP hearing on notice of lien or on notice of levy, according to 26 U.S.C. §§ 6230(b) and 6330(b). The proceedings, held before an IRS Appeals Officer, are informal. As such, they may be conducted

---

[7]The following sections are largely adopted from *Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 624-25. *Living Care* presents a thorough analysis of CDP review in the Sixth Circuit, which has been pretty minimal. *Id.*

through written correspondence, over the phone, or face-to-face.  See Treas. Reg. § 601.106(c) & § 301.6330-1, Q & A-D6.  A taxpayer may challenge his underlying tax liability during a CDP hearing only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  26 U.S.C. § 6330(c)(2)(B). Any other relevant issue relating to the unpaid tax may be raised during the hearing, including spousal defenses, challenges to the appropriateness of collection actions, and alternative collection options (such as posting of a bond, installment agreements, or offers of compromise). 26 U.S.C. § 6330(c)(2)(A).  By statute, the IRS Appeals Officer must:

> (1) conduct a verification that the IRS has met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy;
> (2) consider defenses and collection alternatives proffered by the taxpayer, and;
> (3) make a determination that the "proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

26 U.S.C. § 6330 (c)(3).[8]

After conducting the CDP hearing, the Appeals Officer completes a review and sends the results of his final decision to the taxpayer in a Notice of Determination letter.  *Living Care*, 411 F.3d at 625.  If, after receiving the letter, the taxpayer wishes to appeal, he may submit an appeal to the federal court with jurisdiction over the underlying tax.  *Id.*

### B. The Appropriate Standard for Review of the CDP Hearing

The statutes governing the CDP hearings are silent on the appropriate standard of review to be used by federal courts in reviewing the Appeals Officer's final decision.[9]  In *Living Care*

---

[8]The IRS's list of factors differs from this list provided by the court in *Living Care*. *Living Care*'s list of requirements provides more context than the IRS listing, and thus is a little more specific to the cases at hand.  *Living Care v. U.S.*, 411 F.3d 621, 624-25 (6th Cir. 2005).

[9]Again, *Living Care* supplies the information in this section.

*Alternatives of Utica v. United States*, the Sixth Circuit Court of Appeals examined to the legislative history of the Restructuring and Reform Act to find the appropriate standard under which to review an Appeals Officer's decision. *Living Care*, 411 F.3d at 626. The Sixth Circuit Court relied upon the following statement:

> Where the validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is part of the appeal, no levy may take place during the pendency of the appeal. The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis. Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. In such cases, the appeals officer' determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review.

H.R. Conf. Rept. No. 105-599 at 266 (1998).

Thus, where the underlying tax liability is properly part of the hearing, a court may review the amount of that liability as part of the determination of the appeals officer. Where the underlying tax liability is not properly part of the hearing, a court may only review the decision of the Appeals Officer for abuse of discretion. The language contained in the Act states that the taxpayer may raise "challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. §§ 6330(c)(2)(B) & 6320(c).

In *Living Care*, the plaintiff argued that it had contested the underlying tax liability during the hearing. *See* 411 F.3d at 626. The plaintiff's primary argument was that "nursing homes are different" and the plaintiff, as a nursing home, should, therefore, be subject to a lessened tax liability. *Id.* The court found the plaintiff's evidence of contested liability to be "exceptionally weak." The plaintiff also argued that its complaint, requesting that tax liability be removed,

-9-

constituted a challenge to the underlying tax liability. *Id.* at 627. The court held that these contentions were not sufficient to challenge the validity of the tax. Further, the court found that requesting that the court remove the tax did not constitute a claim at the IRS hearing that the liability was otherwise invalid. In fact, the Sixth Circuit noted that "[Living Care] seems to be admitting [the tax] was valid and then requesting that payment be excused." *Id.*

Plaintiff asserts that he raised the issue of underlying tax liability at the CDP hearing. The hearing summary shows, however, that Plaintiff's assertions against his underlying tax liability were not sufficient to constitute "challenges."[10] Plaintiff simply alleged that he believed the liability had been discharged in bankruptcy, and that the CSED had expired as to the June 1994 Form 941 period. Both of these allegations constitute mistakes of fact, rather than direct challenges to Plaintiff's underlying tax liability. In fact, both could be seen as admissions of the underlying tax liability, with Plaintiff asking the Appeals Officer simply to excuse the liability. During the hearing, Plaintiff also asserted that his illness, his family's illness, and his former partner's illness kept him from paying penalties and interest for the Form 941 periods. Additionally Plaintiff asserted that he could not pay the penalties or interest because the IRS failed to continuously send him notice of his liability.

Plaintiff did not allege during the hearing, in his Complaint, or in his Response to Defendant's Motion for Summary Affirmance that he did not receive statutory notice of the underlying tax liability. Plaintiff does assert that there was a *lapse* in notices sent to him, but he

---

[10] *Living Care* states: "[t]he plain meaning of "challenging validity of the underlying tax liability" requires more than the taxpayer's actions in these cases." 411 F.3d at 627. The taxpayer's actions in *Living Care* involved a general protest that the IRS had misunderstood its challenge of the underlying liability, as well as the public policy argument and the challenge presented in the complaint. *Id.* at 627.

does not argue that Defendant failed to send him proper statutory notice of his tax liability. Thus, the issue of tax liability is not properly a part of the appeal, and the Plaintiff can only challenge the appeals officer's determination based on the abuse of discretion standard.

### C. Application of the Standard

The court in *Living Care* reasoned that to overturn the IRS's decisions in CDP hearing reviews, "we must be convinced that the taxpayer abuse that Congress sought to remedy has occurred in the case." 411 F.3d at 629. The three requirements of the Appeals Officer set forth in the Restructuring and Reform Act guided the application of the abuse of discretion standard in CDP hearing appeals. *Id.* at 627. First,[11] the Appeals Officer is required to decide "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)(C). The *Living Care* court noted that most courts simply reaffirm the Appeals Officer's determination that he conducted the balancing test.[12] 411 F.3d at 627. The sole exception that the court found to that deference was *Mesa Oil, Inc. v. United*

---

[11]These are out of order, but *Living Care* spent the most time with this requirement. I think the 6th Circuit regards it as a threshold requirement.

[12]I believe this is still true today. The Sixth Circuit has given the CDP hearings a great deal of discretion, explaining: "[j]udicial review of collection due process hearings presents a real problem for reviewing courts. Congress overlaid the Restructuring and Reform Act on a previous system that involved very little judicial oversight. The result is a surprisingly scant record, comprised almost exclusively of the parties' appellate briefs and the Note of Determination letter. No transcript or official record of the hearing is required and, accordingly, one rarely exists. Since normal review of administrative decisions requires the existence of a record [citations omitted]. . . Congress must have been contemplating a more deferential review of these tax appeals than of more formal agency decisions. This might explain why, of six collection due process cases reviewed by the Sixth Circuit, five have been disposed of under our Court's Rule 34 and all six have been unpublished. None has overturned the IRS decision or required a remand." *Living Care*, 411 F.3d at 625.

*States*, where the Notice of Determination had "no statement of facts, no legal analysis, and no explanation of how or why the proposed levy balanced the need for collection with [the taxpayer's] interests." *Mesa Oil*, No. Civ.A. 00-B-851, 2000 WL 1745280, at *4 (D. Colo. Nov. 21, 2000). In *Mesa*, the Notice of Determination simply consisted of "a blank recitation of the statute." *Id.* The court in *Mesa* remanded the case back to the IRS for "a more complete record and clarification of the reasoning behind the determination that the balancing test was met." *Living Care*, 411 F.3d at 627.

In this case, Plaintiff does not allege that the Appeals Officer abused his discretion, or that he did not employ the proper balancing analysis. The record of the CDP hearing demonstrates that the Appeals Officer engaged in the balancing analysis in his summary, with a rationale for his actions. The Appeals Officer also provided a statement of facts, and full legal analysis of each of the issues Plaintiff raised during the hearing. The abatement of three periods of tax liability or penalties and interest offers evidence that the Appeals Officer did not sign off on a blanket authorization to the IRS or that he simply provided "a blank recitation of the statute." Further, the Appeals Officer directed Plaintiff to the necessary forms that Plaintiff needed to complete for the Appeals Officer to consider payment alternatives. The Appeals Officer's report was sufficient to show that he balanced the needs for collection against the Plaintiff's concern over the action's intrusiveness.

The Appeals Officer is also required to consider any defenses or collection actions proffered by the taxpayer.[13] For instance, in *Living Care*, the court found that the Notices of

---

[13]"The determination by an appeals officer under this subsection shall take into consideration--
  (B) the issues raised under paragraph (2)"

-12-

Determination, setting forth the issues raised at the hearing and the analysis of those issues, sufficiently indicated the consideration of the defenses and collection actions raised by the plaintiff. *Living Care*, 411 F.3d 629. The court observed: "[t]he [Appeals Officer's] report explains the collection alternatives raised by Plaintiff and why those collection alternatives were impracticable." *Id.* at 629-30. The court then analyzed the decision by the Appeals Officer regarding the collection alternatives proffered by the plaintiff, as set forth in the Notices of Determination. *Id.* at 630. Even though the court found contradictory statements in one of the Notices of Determination, the court held that the Appeals Officer acted within his discretion to reject the suggestions of collection alternatives given by the plaintiff. *Id.* at 631. "[W]ithout a clear abuse of discretion in the sense of taxpayer abuse and unfairness by the IRS, as contemplated by Congress, the judiciary will inevitably become involved on a daily basis with tax enforcement details that judges are neither qualified, nor have the time, to administer." *Id.* Thus, even minor mistakes by the Appeals Officer are not sufficient to justify a remand absent a clear abuse of discretion. *Id.*

In the present case, Plaintiff does not allege that the Appeals Officer abused his discretion or that he failed to consider any of Plaintiff's defenses or collection alternatives. The Notice Of Determination shows a clear consideration and analysis of the issues presented by Plaintiff, including both defenses and collection alternatives. Specifically, the Appeals Officer abated tax,

---

26 U.S.C. 6330 § (c)(3).
    Paragraph 2 reads in part: "The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
        (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives . . . .
26 U.S.C. 6330 § (c)(2).

penalties and interest on some of the periods for which Plaintiff presented defenses. Plaintiff alleged that for one of the tax periods, because the partnership was no longer been operational, it could generate no profit on which it could be taxed. The Appeals Officer responded to this argument by abating the tax, penalties and interest for that period. When Plaintiff argued that two other periods had been discharged in bankruptcy, the Appeals Officer determined that Plaintiff was no longer liable for those periods. Plaintiff also presented collection alternatives after which the Appeals Officer directed Plaintiff to the necessary forms needed to be completed in order for him to successfully propose those methods for the Officer's consideration. While Plaintiff ultimately chose not to submit these forms, the Appeals Officer did give him the information necessary to file them.

The Appeals Officer's third requirement is that he conduct a verification that the IRS has met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy.[14] While the *Living Care* court did not explicitly discuss this matter, the Court's reasoning as applied to the other two requirements of the Appeals Officer applies to this requirement as well. The Notice of Determination should provide evidence that the Appeals Officer verified that the IRS met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy.

Plaintiff does not allege that the Appeals Officer failed to conduct the required verification. In fact, the Notice of Determination presented along with the Complaint contains a section titled "Verification of Legal and Procedural Requirements," which identifies the relevant law and procedures used by the IRS as well as, in some cases, the dates on which the IRS took

---

[14] 26 U.S.C. § 6330(c)(3).

specific steps.  The Notice of Determination presents the legal and procedural requirements and verifies them.  Plaintiff's Response to Defendant's Motion does not allege anything beyond the contention that Plaintiff challenged liability.  Because Plaintiff does not set forth specific facts showing a general issue for trial, Plaintiff has not created a question of material fact that there is insufficient evidence to find in his favor.

The Appeals Officer has met the three requirements set forth in *Living Care*.[15]  Plaintiff does not allege that the Appeals Officer did not meet these requirements, nor does Plaintiff allege that the Appeals Officer abused his discretion.[16]  Further, there has been no evidence presented that the Appeals Officer has abused his discretion in this matter.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Affirmance as to Plaintiff's Dispute of the Notice of Determination.  This case is hereby DISMISSED.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: March 16, 2006**

---

[15] 411 F.3d at 624-25.

[16] *See* Plaintiff's Response to Motion for Summary Affirmance.